IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| totes>>Isotoner Corp., | : | Case No. 1:04-CV-849 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING PLAINTIFF'S |
| | : | MOTION FOR JUDGMENT ON THE |
| International Chemical Workers Union | : | PLEADINGS AND GRANTING IN |
| Council/ UFCW Local 664C, | : | PART AND DENYING IN PART |
| | : | DEFENDANT'S MOTION FOR |
| Defendant. | : | SUMMARY JUDGMENT AND/OR |
| | : | JUDGMENT ON THE PLEADINGS |

This matter comes before the Court on Plaintiff's Motion for Judgment on the Pleadings (doc. 9) and Defendant's Motion for Summary Judgment and/or Judgment on the Pleadings (doc. 11).  Plaintiff totes>>Isotoner Corp. ("Company") filed this action pursuant to Section 301 of the Labor-Management Relations Act of 1947 ("LMRA" or "Act"), 29 U.S.C. § 185.  The Company seeks in its motion to vacate a supplemental arbitration award issued on September 30, 2004 ("Supplemental Award").  Defendant International Chemical Workers Union Council of the United Food and Commercial Workers Union Local 664C ("Union") seeks in its motion a judgment confirming and enforcing the original arbitration award issued on March 5, 2004 ("Original Award") and the Supplemental Award.  For the reasons that follow, the Court **CONFIRMS** the Original Award, but **VACATES** the Supplemental Award.  Plaintiff's motion is **GRANTED** and Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The Company is an employer with its principal place of business in Butler County, Ohio. The Union is an labor organization representing employees and it is the exclusive representative

1

of the production and maintenance employees working at the Company's distribution center in Butler County, Ohio.

**The 1998-2002 CBA**

The Company and the Union entered into a collective bargaining agreement effective from April 27, 1998 through April 26, 2002 ("1998-2002 CBA"). (Doc. 2, ex. A.)

Article XIX of the 1998-2002 CBA contained "Duration" provisions and stated in applicable part that "Unless otherwise agreed upon by the parties, notice to modify and/or terminate within the time period specified above shall prevent this Agreement from renewing itself and shall automatically terminate said Agreement upon its expiration date without benefit of further notice from either party." (Id. at 44.)

Article XXI was relevant to the original labor grievance precipitating this lawsuit. That section provided as follows:

> Article XXI – Miscellaneous, Waiver Clause
>
> The Company and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject on matters not specifically referred to or covered in this Agreement, except where it is mutually agreed between the Company and the Union to do so. Everyone must understand, this is the contract.

(Id. at 47.)

Appendix C to the 1998-2002 CBA provided that "Coverage for above benefits [including Medical Insurance] will be as outlined in the totes>>Isotoner Umbrella of Benefits plan and will be available to employees after 60 working days." (Id. at 53.)

2

**Change to Umbrella of Benefits**

Effective January 1, 2002, the Company changed medical benefits for non-Union employees under its "Umbrella of Benefits." This policy change also changed the Union members' medical benefits pursuant to Appendix C of the 1998-2002 CBA.

**The 2002-2007 CBA**

In or around February 2002, the Union gave timely notice pursuant to the 1998-2002 CBA that it sought amendments or changes to the existing agreement. The parties began contract negotiations in anticipation of the termination of the 1998-2002 CBA. The negotiations resulted in a new collective bargaining agreement which became effective on April 27, 2002 ("2002-2007 CBA"). The 2002-2007 CBA contained identical Article XXI and Appendix C provisions as the 1998-2002 CBA quoted above. (Doc. 4-3.)

**The June 17, 2002 Grievance and the Original Award**

The Union filed a grievance on June 17, 2002 protesting the Company's January 1, 2002 change to major medical coverage. The parties were unable to resolve the grievance and they submitted the dispute to arbitration before labor arbitrator Louis V. Imundo Jr.

The parties did not agree to a joint stipulation of issues to be decided by Arbitrator Imundo. Arbitrator Imundo determined the Issues to be as follows in the written Original Award dated March 5, 2004:

- Did Management violate the Agreement when they unilaterally made changes in the healthcare insurance benefits beginning on January 1, 2002?
- If Management violated the Agreement what is the appropriate remedy?

(Doc. 2, ex. C at 4.) The only Agreement before the Arbitrator was the 1998-2002 CBA and Arbitrator Imundo quoted provisions of that CBA in the written Original Award. (Id. at 2.) As

3

to the first Issue defined by the Arbitrator, he examined Article XXI and Appendix C and determined that "Management violated the Agreement when they unilaterally made changes in the healthcare insurance benefits on January 1, 2002." (Id. at 12.)

In regards to the second Issue, the Arbitrator fashioned a remedy as an award as follows:

> The instant grievance is sustained. The changes Management made to the employees' healthcare insurance coverage on or about January 1, 2002 are hereby rescinded and all the benefits previously in effect are to be reinstated. The change in employees' share of the healthcare insurance premiums that occurred as a result of these changes are hereby rescinded and employees are to be reimbursed for any and all additional costed they incurred as a result of Management having violated the Agreement. In addition, employees are to be reimbursed for all monies spent for benefits that would have been paid for under the coverage in effect before the changes occurred, but were not paid for after the changes occurred. Management is hereby directed to cease and desist from unilaterally making any changes in employees' healthcare insurance benefits provided for in Appendix C of the Agreement. Management is hereby directed to cease and desist from unilaterally increasing employees' share of healthcare insurance premium costs. The Arbitrator will retain jurisdiction over this matter until the Award is fully implemented.

(Id. at 13.)

**The Supplemental Grievance and Supplemental Award**

After the Original Award was issued, the Company calculated the amount it owed to each employee under the Original Award for the period of January 1, 2002 (the date of the change to the Umbrella of Benefits plan) through April 26, 2002 (the last date the 1998-2002 CBA was in effect). The Union objected to the dates the Company used to calculate the amounts owed each employee. The Union filed a protest with the Arbitrator contending that the Company failed to comply with the Original Award. The parties agreed to arbitrate the compliance issue before Arbitrator Imundo. Arbitrator Imundo held a hearing on September 13, 2004.

Arbitrator Imundo stated at the hearing that he had not maintained documents pertaining

4

to the Original Award. The parties submitted as joint exhibits the 1998-2002 CBA and the pertinent grievance documents. The parties also provided the Arbitrator with a copy of the 2002-2007 CBA as a courtesy. (Doc. 2, ex. D at 21-22.) The Company explicitly stated its position that the 2002-2007 CBA was irrelevant to the compliance issue. (Id.) The parties made oral arguments at the hearing and then submitted briefs.

Again, the parties had not agreed to a joint stipulation of issues to be decided by Arbitrator Imundo. Rather, the parties and the Arbitrator came to an understanding at the September 13, 2004 hearing. Arbitrator Imundo issued the written Supplemental Award on September 30, 2004. Arbitrator Imundo determined the Issues to be as follows:

- Has Management complied with the Arbitrator's March 5, 2004 Award?
- If not, what is the appropriate remedy?

(Doc. 2, ex. G at 1.)

Arbitrator Imundo answered "yes" to the first question. He stated that he had been aware during the initial grievance proceedings that a new collective bargaining agreement was in effect. He stated that he issued "a cease and desist" award in the Original Award "with the clear intention of providing quasi-injunctive relief." (Id. at 4.) He stated further that "The NLRB and the Courts have long recognized that arbitrators have the legitimate authority to grant quasi-injunctive relief in the form of cease and desist orders." (Id.) Finally, he stated as follows:

> The Arbitrator notes that nothing in the 2002-2007 agreement gives Management the right to unilaterally change negotiated healthcare insurance benefits or negotiated co-pays. Clearly, if Management's decision was violative of the 1998-2001 [sic] agreement it is violative of the 2002-2007 agreement. The improper action that occurred during the 1998-2001 [sic] agreement simply carried over into the 2002-2007 agreement.
>
> In conclusion, for all the aforementioned reasons Management failed to comply with the Award.

5

(Id.)  In the award section, the Arbitrator directed the Company "to comply with the March 5, 2004 Award."  (Id.)

**The Lawsuit**

The Company filed a Complaint (doc. 1) on December 27, 2004 and then an Amended Complaint (doc. 2) on January 25, 2005 asking the Court to vacate the Supplemental Award. The Union filed an Answer and Counterclaim (doc. 4) seeking enforcement of the Original Award and the Supplemental Award.  The parties' respective dispositive motions have been fully briefed and are ripe for determination.

## II.     STANDARD FOR REVIEW OF AN ARBITRATOR'S DECISION

When terms of a CBA call for grieving before an arbitrator, a district court's review of the arbitrator's decision is very narrow.  The Sixth Circuit has called it "one of the narrowest standards of judicial review in all of American jurisprudence."  Lattimer-Stevens Co. v. United Steelworkers of America, 913 F.2d 1166, 1169 (6th Cir. 1990).  The narrowness of the review reflects the strong statutory preference for private settlement of labor disputes without government intervention.  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37 (1987).  The Supreme Court has stated:

> The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.  Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

Id. at 37-38.

"When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation and citation omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38. An arbitration award "must draw its essence from the [collective bargaining agreement] and cannot simply reflect the arbitrator's own notions of industrial justice." Id.

In 2007, the en banc panel of the Sixth Circuit took a fresh look at Garvey and Misco and stated that "once it was established that the arbitrator was construing or applying the contract (and acting within the scope of his authority), it made no difference whether the arbitrator had committed 'serious,' 'improvident' or even 'silly' errors in resolving the merits of the dispute." Michigan Family Resources, Inc. v. Service Empl. Int'l Union Local 517M, 475 F.3d 746, 753 (6th Cir. 2007) (en banc) (quoting Misco, 484 U.S. at 38-39; Garvey, 532 U.S. at 509-10). The Sixth Circuit in Michigan Family Resources overruled a four-part test long-applied in the Circuit[1] and instructed that district courts instead should ask the questions of "procedural

---

[1] In the overruled four-part test, courts determined that an arbitration award failed to draw its essence from the collective bargaining agreement when,

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.

Kuhlman Elec. Corp. v. International Union, 144 F.3d 898, 902 (6th Cir. 1998) (quotations and

aberration" that <u>Garvey</u> and <u>Misco</u> identify:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

<u>Id.</u> The <u>en</u> <u>banc</u> panel instructed that in cases of doubt the district courts should assume that the arbitrator was engaged in contract interpretation. <u>Id.</u> Finally, the <u>en</u> <u>banc</u> panel admitted that under this standard "only the most egregious awards [will] be vacated." <u>Id.</u>

In the case at hand, as in <u>Michigan Family Resources</u>, there is no allegation that the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award. The issues then are whether the arbitrator acted outside his authority by resolving a dispute not committed to arbitration or whether he arguably was construing the contract. In resolving the second of the related issues, the Sixth Circuit has found it to be relevant whether the arbitrator referred to, quoted or analyzed provisions from the CBA and whether he wrote anything to indicate that the was doing something other than interpreting the contract. <u>Id.</u> at 754. The <u>en banc</u> panel in Michigan Family Resources determined that the arbitrator in the case made a legal error, perhaps a serious one, but held that it could not vacate the award because the arbitrator had been arguably construing the CBA. <u>Id.</u> at 756.

---

citations omitted).

**III.    ANALYSIS**

**A.    The Original Award**

The Union moves the Court to confirm the Original Award.  The Company has not moved to vacate the Original Award and does not challenge the merits of the Original Award.  Accordingly, the Court will confirm the Original Award issued March 5, 2004.

**B.    The Supplemental Award**

The Union moves the Court to confirm the Supplemental Award, while the Company moves the Court to vacate the Supplemental Award.

In light of the Sixth Circuit's recent en banc pronouncement in Michigan Family Resources, and the parties' arguments, the issue before the Court regarding the Supplemental Award is whether Arbitrator Imundo "acted 'outside his authority' by resolving a dispute not committed to arbitration."  475 F.3d at 753.  The Court answers this dispositive question affirmatively.  Arbitrator Imundo acted outside the scope of his authority by resolving a dispute not committed to arbitration when he analyzed and determined that the Company had violated the 2002-2007 CBA.

The parties agreed at the Supplemental Grievance hearing that the issue before Arbitrator Imundo was whether the Company had complied with the Original Award.  (Doc. 2, ex. D at 8, 13.)  The parties' understanding regarding the issue presented at the Supplemental Arbitration was shared by the Arbitrator.  Arbitrator Imundo framed the issue as follows in his written opinion: "Has Management complied with the Arbitrator's March 5, 2004 Award?"  (Doc. 2, ex. G at 1.)  The Original Award was based undisputedly on the 1998-2002 CBA only.  (Doc. 2, ex. C at 3 (citing provisions of the 1998-2002 CBA)).  Accordingly, the compliance issue to be

9

resolved at the Supplemental Arbitration arose solely from the 1998-2002 CBA as well.  The Arbitrator, however, in the Supplemental Award, undertook to determine whether the Company had complied with the 2002-2007 CBA.  He stated as follows in the written Supplemental Award:

> The Arbitrator notes that nothing in the 2002-2007 agreement gives Management the right to unilaterally change negotiated healthcare insurance benefits or negotiated co-pays.  Clearly, if Management's decision was violative of the 1998-2001 [sic] agreement it is violative of the 2002-2007 agreement.  The improper action that occurred during the 1998-2001 [sic] agreement simply carried over into the 2002-2007 agreement.

(Doc. 2, ex. G at 4.)  The Arbitrator does not state and the Court will not venture to guess whether his decision as to the compliance issue properly before him would have been the same had he not considered the 2002-2007 CBA.  The Court determines only that the Supplemental Award must be vacated to the extent that Arbitrator acted outside his authority by determining that the Company violated the 2002-2007 CBA.

The Sixth Circuit upheld a district court decision vacating an arbitrator's award in a 1989 case when the arbitrator had based his decision on an oral agreement of the parties that contradicted the plain language of the collective bargaining agreement.  International Brotherhood of Elect. Workers, Loc. 429 v. Toshiba Am., Inc., 879 F.2d 208, 211 (6th Cir. 1989).  The grievance arose when a company discharged employees who had participated in a walk-out.  Id. at 209.  The company acted to terminate the employees despite agreeing orally during walkout resolution negotiations to not terminate employees.  Id.  The collective bargaining agreement at issue specified that the arbitrator in a grievance was limited to ruling on whether an employee had violated the no-strike clause of the collective bargaining agreement and could not alter or amend the penalty the company had imposed.  Id. at 210.  The union

stipulated at the arbitration that the walk-out had been in violation of the collective bargaining agreement. Id. Thus, the court held that the arbitrator could not enforce the oral agreement between the parties not to discharge the employees because the arbitrator was limited to interpreting the collective bargaining agreement. Id.

This case is factually similar to the extent that Arbitrator Imundo was prohibited from basing his decision on the 2002-2007 CBA when the only issue presented arose under the 1998-2002 CBA. In both this case and in Toshiba, the arbitration awards are vacated because the arbitrators acted outside their authority by resolving disputes not committed to them. See Michigan Family Resources, 457 F.3d at 753.[2] The Court will vacate the Supplemental Award and remand the matter to Arbitrator Imundo for his re-consideration of the issues properly presented to him by the parties. See Aircraft Braking Sys. Corp. v. Local 856, International Union, United Auto., Aerospace and Agricultura Implement Workers, UAW, 97 F.3d 155, 162 (6th Cir. 1996) (authority to vacate and remand); Competitive Interiors, Inc. v. Laborers' Intern. Union of North America, Inc., Local No. 1015, No. 5:06-cv-370, 2006 WL 1967378, *3 (N.D. Ohio July 12, 2006) (citing Garvey, 532 U.S. at 511, for the same principle).

The Court's decision to vacate the Supplemental Award is based on a straightforward application of the applicable standard of review for arbitration awards. In arguing that the

---

[2] The Union suggests that the standard of review should be tweaked in this case to account for the special procedural circumstances herein. It suggests that the Court should not ask simply whether the Arbitrator was arguably applying the 1998-2002 CBA when he issued the Supplemental Award, but also whether he was arguably applying the Original Award. The Union makes a distinction that is not material. The Original Award was based solely on the 1998-2002 CBA, not the 2002-2007 CBA. When the Arbitrator determined that the Company had not complied with the Original Award at least in part because the Company had violated the 2002-2007 CBA, it was operating outside the parameters of its authority.

11

Supplemental Award should be enforced, not vacated, the Union unnecessarily complicates the issue presented to the Court.  For instance, the Union asserts that the Company is precluded from challenging the arbitrability of the 2002-2007 CBA in this case.  The Union submits that the Company impliedly submitted to Arbitrator Imundo the issue whether its conduct violated the 2002-2007 CBA because it participated in the Supplemental Grievance arbitration proceedings wherein the topic of the 2002-2007 CBA was raised.  "[W]here the parties submit the issue of arbitrability to the arbitrator, without initially bringing it before the district court, agreement to have the arbitrator decide it can be implied."  Freeman Const. Co. v. Structural Iron Workers' Loc. No. 17, No. 91-3455, 1992 WL 56751, *3 (6th Cir. Mar. 23, 1992).  In Freeman Construction, the plaintiff voiced his concern at an arbitration hearing that the grievance committee may not have had jurisdiction to conduct an arbitration on the matter at issue, but the Court held that he waived his objection by participating in the arbitration.  Id.  Similarly, the Sixth Circuit has instructed that an arbitrator's decision that a particular issue has been submitted to arbitration is entitled to extraordinary deference.  Lattimer-Stevens Co. v. United Steelworkers of Am., 913 F.2d 1166, 1170 (6th Cir. 1990).  The Union's position is that the Arbitrator was entitled to determine that the 2002-2007 CBA was at issue either because of the deference accorded to his determination of the issues or because the Company waived objection by participating in the Supplemental Grievance arbitration.

      This argument misses the mark, however.  Freeman Construction is distinguishable on the facts.  Freeman Construction concerned whether the entire subject matter of the dispute underlying the grievance was subject to grievance and arbitration before the arbitration panel.  1992 WL 56751 at *2-3.   The Company here was not similarly objecting to the authority of

Arbitrator Imundo to arbitrate the subject matter of the parties' dispute.  In fact, the parties and the Arbitrator agreed that the issue in Supplemental Grievance arbitration was whether the Company had complied with the Original Award.  (Doc. 2, ex. D at 8, 13; Id., ex. G at 1.)  The Original Award arose solely from the 1998-2002 CBA.  (Id., ex. C at 3 (citing provisions of the 1998-2002 CBA)).  The Company's objection is more akin to an evidentiary argument that the 2002-2007 CBA is not relevant to the determination of the agreed-upon issue of compliance with the Original Award.  The Court agrees with the Company's argument and Lattimer-Stevens does not require a contrary result.  Arbitrator Imundo himself articulated that the issue presented was limited solely to compliance with the Original Award.  It is not a matter of a lack of deference to the Arbitrator to hold that he exceeded the scope of his authority when he undertook to determine a matter extraneous to the stated issue, whether the Company had violated the 2002-2007 CBA as well.

      The Union also contends that the Company's attempt to vacate the Supplemental Award is merely a means for asserting an improper collateral attack on the Original Award.  The Union points to Sixth Circuit law holding that "objections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired." Occidental Chemical Corp. v. International Chemical Workers Union, 853 F.2d 1310, 1317 (6th Cir. 1988).  Because the Company did not timely move to vacate the Original Award, it cannot challenge the merits of the Original Award here.  The Union contends that by challenging the Supplemental Award the Company is really seeking to void the Original Award insofar as it had application beyond the expiration date of the 1998-2002 CBA.

13

The Court's response to this argument is two-fold.  First, the Court is confirming the Original Award because the Union has moved for its confirmation and Company has not made a timely objection thereto.  Second, the Court's task in determining whether to confirm or vacate the Supplemental Award is limited to examining the questions of "procedural aberration" identified in the recent Michigan Family Resources.  The Court has considered the arguments of both parties regarding the Supplemental Award through a lens of answering the questions posed in Michigan Family Resources.  It is not appropriate for the Court under that standard of review to hypothesize how the Arbitrator will determine the issue of the Company's compliance with the Original Award when the Supplemental Award is taken up again on remand.  Therefore, the Court will not vacate the Supplemental Award based on the Union's improper collateral attack argument.

**IV.    CONCLUSION**

The Court hereby **AFFIRMS** the Original Award and **VACATES** the Supplemental Award.  The case is **REMANDED** to the Arbitrator for reconsideration of the Supplemental Arbitration.  Plaintiff's motion (doc. 9) is **GRANTED** and Defendant's motion (doc. 11) is **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED.

       ___s/Susan J. Dlott_____
       Susan J. Dlott
       United States District Judge